UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMID YEGANEH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>Defendants. | Case No. 21-cv-02426-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 29 |

## I.   INTRODUCTION

Plaintiffs are Iranian nationals who applied for visas and naturalization, and several U.S. citizens and lawful permanent residents who filed family-based visa petitions on behalf of their Iranian-national relatives. They allege their applications were denied or will be denied based on terrorism-related inadmissibility grounds ("TRIG") due to their prior service in the Islamic Revolutionary Guard Corps ("IRGC") in Iran. Plaintiffs, for themselves and on behalf of a putative class, seek an order compelling Defendants to create a mechanism for a TRIG waiver or exemption for the ineligibility resulting from service in the IRGC.

Now pending is Defendants' motion to dismiss the action for lack of subject-matter jurisdiction and failure to state a claim. For the following reasons, the Court **GRANTS** Defendants' motion.

## II.   BACKGROUND

A.   Relevant Legal Background

   1.   Nonimmigrant and Immigrant Visas and Consular Processing

A noncitizen may generally not be admitted to the United States without having been issued an immigrant or nonimmigrant visa. 8 U.S.C. §§ 1181(a), 1182(a)(7), § 1184(a); *see Kerry*

*v. Din*, 576 U.S. 86, 89 (2015). Nonimmigrant visas are usually issued for temporary visits, such as for tourists, students, or certain types of temporary workers, whereas immigrant visas are for permanent residence in the United States with a path to citizenship. *See* 8 U.S.C. § 1101(a)(15); *United States v. Idowu*, 105 F.3d 728, 731 (D.C. Cir. 1997) (explaining difference between nonimmigrant and immigrant visas).

Foreign nationals seeking visas to enter the United States must follow the process required by the INA and carry the burden of establishing eligibility for a visa. 8 U.S.C. § 1361. For family-based immigrant visas, a U.S. citizen or lawful permanent resident must file a petition with U. S. Citizenship and Immigration Services ("USCIS") on behalf of the noncitizen either as an immediate relative or other family-preference category. *See* 8 U.S.C. § 1154(a)(1); 8 C.F.R. § 204.2. If USCIS approves the petition, the noncitizen beneficiary may apply for an immigrant visa. *See* 8 U.S.C. §§ 1201(a), 1202(a). For beneficiaries applying for a visa from abroad, USCIS sends the petition to the State Department's National Visa Center to prepare the case for a visa application at the designated U.S. embassy or consulate. 8 U.S.C. § 1202(a); 22 C.F.R. § 42.61 *et seq*. The noncitizen must then appear for an in-person interview with a State Department consular officer. *See* 8 U.S.C. § 1202(e); 22 C.F.R. § 42.62(b). Nonimmigrant visas follow a similar process prescribed by regulation. *See* 8 U.S.C. § 1202(c); 22 C.F.R. § 41.101 et seq.

"When a visa application . . . [is properly] executed before a consular officer . . . the consular officer must either issue or refuse the visa under [§ 1182(a) or § 1201(g)] or other applicable law." 22 C.F.R. § 42.81(a); *see also* 22 C.F.R. § 41.121(a). This decision rests with the consular officer. 2 *See* 8 U.S.C. § 1201(a)(1). But generally, no visa "shall be issued to an alien" if "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," or "the consular officer knows or has reason to believe" that the noncitizen is ineligible. 8 U.S.C. § 1201(g); 22 C.F.R. § 40.6.

2. <u>INA Terrorism Related Inadmissibility Grounds</u>

The INA defines "terrorist organization" as an organization:

(I) designated under section 1189 of this title;

(II) otherwise designated, upon publication in the *Federal Register*,

2

> by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or
>
> (III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

8 U.S.C. § 1182(a)(3)(B)(vi).

The government refers to organizations defined by subclause I as "Tier I" organizations. Likewise, the government refers to organizations described in subclauses II and III to as "Tier II" and "Tier III" organizations, respectively. Docket No. 29 ("Gov't MTD") at 3 n.3. Unlike Tier I and Tier II organizations, which are categorically designated, adjudicators determine whether an organization falls within the definition of an undesignated or Tier III terrorist organization on a case-by-case basis. *See* 8 U.S.C. § 1182(a)(3)(B)(vi)(III). Even if a group is not designated as a Tier I or Tier II organization, the adjudicator may determine that it meets the definition of a Tier III terrorist organization if it or its subgroup: commits or incites terrorist activity; prepares or plans a terrorist activity; gathers information on potential targets for terrorist activity; solicits funds for a terrorist activity or organization; or provides material support to a terrorist, a terrorist organization, or for the commission of a terrorist activity. *See id.* § 1182(a)(3)(B)(iv). Further, a group may meet the definition of a Tier III terrorist group for soliciting an individual to engage in or support terrorist organizations or activity. *See id.* § 1182(a)(3)(B)(iv)(V).

The INA's terrorism provisions render applicants tied to such organizations "ineligible" for visas or admission to the United States. The INA requires that:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law

8 U.S.C. § 1201(g).

3

The terrorism-related inadmissibility grounds at Section 1182(a)(3)(B)(i) cover a broad range of activity that renders inadmissible any noncitizen who:

> (I) has engaged in a terrorist activity;
>
> . . .
>
> (V) is a member of a [Tier I or Tier II organization];
>
> (VI) is a member of a [Tier III organization], unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;
>
> . . .
>
> (VIII) has received military-type training (as defined in section 2339D(c)(1) of title 18, United States Code) from or on behalf of any organization that, at the time the training was received, was a terrorist organization . . . .

8 U.S.C. § 1182(a)(3)(B)(i). The term "engage in terrorist activity" means, among other things, in an individual capacity or as a member of an organization:

> (VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training
>
> . . .
>
> (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) [Tier I or Tier II] or to any member of such an organization; or
>
> (dd) to a terrorist organization described in clause (vi)(III) [Tier III], or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

8 U.S.C. § 1182(a)(3)(B)(iv).

In addition to creating terrorism-related inadmissibility grounds, Congress provided the Executive Branch two waiver and exemption authorities in the INA.

The first waiver authority relevant to this case of affords discretion to the Executive Branch to *temporarily* admit certain *nonimmigrant* visa applicants, notwithstanding their

4

inadmissibility under TRIG:

> [A]n alien (i) who is applying for a nonimmigrant visa and is known or believed by the consular officer to be ineligible for such visa under [§ 1182(a)] . . . **may, after approval by the Attorney General of a recommendation by the Secretary of State or by the consular officer that the alien be admitted temporarily despite his inadmissibility, be granted such a visa and may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General**, or
>
> (ii) who is inadmissible under [§ 1182(a)] . . . but **who is in possession of appropriate documents or is granted a waiver thereof and is seeking admission, may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General**.

8 U.S.C. § 1182(d)(3)(A) (emphasis added). This waiver applies to individuals, not groups, and includes waiver for those deemed to be a member of a Tier I, II, or III terrorist organization.

Second, Congress provided authority to the Secretaries of State and Homeland Security to *exempt* certain individuals and groups from TRIG:

> The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's ***sole unreviewable discretion*** that subsection [1182](a)(3)(B) shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) [Tier III organizations] shall not apply to a group within the scope of that subsection.

*See id.* § 1182(d)(3)(B)(i) (emphasis added). This exemption applies to individuals or groups designated as Tier III organizations.

3. <u>2019 TRIG Designation of the Islamic Revolutionary Guard Corps</u>

In April 2019, the Secretary of State designated the IRGC as a Foreign Terrorist Organization (FTO) under 8 U.S.C. § 1189, making it a Tier I organization. *See In re Designation of the IRGC (and other Aliases) as a Foreign Terrorist Organization*, 84 Fed. Reg. 15278-01 (Apr. 15, 2019). Thus, individuals who served in the IRGC after its designation as a Tier I organization in April 2019, are inadmissible under 8 U.S.C. § 1182(a)(3)(B).

For individuals who served in the IRGC *prior* to April 2019, immigration benefits are unavailable if the consular officer determines that the IRGC was a Tier III undesignated terrorist

5

organization at the time of the applicant's service, *see* 8 U.S.C. §§ 1182(a)(3)(B)(vi)(III), 1201(g), unless a non-immigrant visa applicant is recommended for a waiver and approved "in the discretion of the Attorney General" under 8 U.S.C. § 1182(d)(3)(A), or the Secretaries of State and DHS, in their "sole unreviewable discretion," create an applicable group or situational exemption under 8 U.S.C. § 1182(d)(3)(B)(i).

As a matter of policy, to date, the Secretaries of State and DHS have declined to exercise their authority under 8 U.S.C. § 1182(d)(3)(B)(i) to create any exemptions for Iranian visa applicants whose service in the IRGC is found to render them ineligible under TRIG. *See* U.S. Virtual Embassy Iran, "FAQs for Iranian Applicants," available at https://ir.usembassy.gov/visas/faqs/ (last accessed on Nov. 1, 2021) ("The IRGC was designated as a Foreign Terrorist Organization in April 2019, and has been involved in violence and terror for decades. . . . On a case-by-case basis, the Department of Homeland Security may, on request from the Department of State, grant a waiver that permits issuance of a non-immigrant visa to an applicant ineligible due to the designation of the IRGC as a Foreign Terrorist Organization. No such waiver is available for immigrant visa applications.").

B.   <u>Factual Allegations in the First Amended Complaint ("FAC")</u>

Plaintiffs are primarily unadmitted and nonresident noncitizens who have applied for various nonimmigrant and immigrant visas, as well as several U.S. citizens and lawful permanent residents who filed family-based visa petitions on behalf of their relatives. Docket No. 26 ("FAC") ¶¶ 5-38. They allege that they were—or expect to be—denied visas or immigration benefits under 8 U.S.C. § 1182(a)(3)(B). *See id*. The amended complaint also includes three lawful permanent residents "who ha[ve] applied for naturalization, but who *expect*[] to be denied for . . . prior involuntary service with the IRGC," *see* FAC ¶¶ 10, 32, 33 (emphasis added). Plaintiffs also seek to "represent a nationwide class consisting of all Iranians who have applied for an immigrant, nonimmigrant, or naturalization benefit under U.S. law but have been denied" due to their employment with the IRGC pursuant to 8 U.S.C. § 1182(a)(3)(B). FAC ¶ 67.

First, Plaintiffs allege that Defendants' actions have created a visa application process where the applicant Plaintiffs "are told that they are inadmissible for life based on their prior

employment by the IRGC and that there is no waiver process available." FAC ¶ 80. They contend this process violates 22 C.F.R. §§ 41.121 and 42.81, which Plaintiffs state "require[s] a Consular Officer to explain when denying a visa 'whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal.'" FACT ¶¶ 80, 87.

Second, Plaintiffs claim that "Defendants' actions have resulted in visa adjudication processes without any consistent and meaningful process by which to submit evidence of waiver eligibility or to have such evidence considered by DOS consular officers, resulting in a lack of any review of findings of inadmissibility under [8 U.S.C. § 1182(a)(3)(B)]." *Id*. ¶¶ 81, 88, 94. Plaintiffs allege "consular officers have no discretion over whether or not to grant a waiver, even when presented with compelling evidence that a visa applicant's service in the IRGC was against their will." *Id*. ¶¶ 82, 89, 95.  Plaintiffs allege that consular officers are not able to exercise discretion on visa applications because the officers are required to reject all applicants who served in the IRGC in violation of 8 U.S.C. § 1104(a), which provides consular officers with "complete discretion over the issuance of visas" that "may not be circumscribed by the Secretary of State." *Id*. ¶ 85.

Third, Plaintiffs allege that "creat[ing] a policy where all former members of the IRGC, whether through involuntarily service and conscription or not, are inadmissible to the United States for life, without a possibly of waiver" violates their "liberty interest in family reunification . . . without due process." *Id*. ¶¶ 84 (raising constitutional violation under the APA), 100 (raising same claim in a separate count).

Plaintiffs ask the Court for a determination that "Defendants' actions in creating a policy where involuntary service in the IRGC leads to automatic findings of inadmissibility under [8 U.S.C. § 1182(a)(3)(B)], and that no waiver of this finding is possible, is a violation the INA, APA, and the U.S. Constitution." FAC at 32.  They seek vacatur of "all findings made under [8 U.S.C. § 1182(a)(3)(B)] against Plaintiffs," and "any agency guidance, policies, and procedures that implement [8 U.S.C. § 1182(a)(3)(B)] for involuntary service in the IRGC." *Id*.  Plaintiffs further seek an order "directi[ng] Defendants . . . involved in deciding the admissibility of individuals under INA 212(a)(3)(B) [8 U.S.C. § 1182(a)(3)(B)], to reopen the decisions and have

7

them processed subject to the possibility of a waiver . . . ." *Id*.

Plaintiffs summarize that they "are seeking an order compelling Defendants to create a mechanism for a TRIG waiver or exemption for the ineligibility resulting from their involuntary service in the Islamic Revolutionary Guard Corps." Docket No. 33 ("Opposition") at 1.

C.  Procedural Background

Plaintiffs filed this action on April 4, 2021. Docket No. 1. They filed the operative first amended complaint on June 28, 2021. Docket No. 26. Now pending is Defendants' motion to dismiss the FAC for lack of subject-matter jurisdiction as to certain Plaintiffs and for failure to state a claim as to all Plaintiffs and the proposed class. Docket No. 29.

### III.   LEGAL STANDARDS

A.  Lack of Subject Matter Jurisdiction/Standing (Rule 12(b)(1))

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs*., 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* litigation may occur." *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997) (emphasis in original). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations marks and citations omitted). "That is so because, if

8

the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Bova*, 564 F.3d at 1096 (explaining that "ripeness and standing are intertwined."). Like claims by plaintiffs who lack Article III standing, claims that are not ripe must also be dismissed for lack of subject-matter jurisdiction. *See Bova v. City of Medford*, 564 F.3d 1093, 1097 (9th Cir. 2009).

B.  Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**IV.   DISCUSSION**

Defendants argue that certain Plaintiffs' claims should be dismissed because the Court lacks subject matter jurisdiction. Defendants contend that the remaining claims and class allegations should be dismissed because Plaintiffs fail to state claims. The Court addresses

9

Defendants' arguments in turn.

A.   Subject Matter Jurisdiction

    1.   Redressability

Defendants identify three Plaintiffs whose visas were denied under an independent statutory ground *other* than TRIG, or for an independent statutory ground *in addition* to TRIG. Specifically, three Plaintiffs had their visas denied under § 306 of the Enhanced Border Security and Visa Entry Reform Act ("EBSVERA"). FAC ¶¶ 5 (Ahvan Ghaderi "received a denial of his DS-160 nonimmigrant visa application nothing that he was refused under [§ 1182(a)(3)(B)] and Section 306 of [EBSVERA]"); 19 (Mehrdad Mohtadi's "student (F-1) visa application was denied by Defendants under Section 306 of [EBSVERA]."); Docket No. 29-1 ("McNeil Decl.") ¶ 19 (a consular officer refused Ali Khadempar's "K-1 visa application under [§ 1182(a)(3)(B)] and Section 306 of [EBSVERA]")[1]. Plaintiffs' complaint does not challenge the lawfulness of any of Defendants' denials of Plaintiffs' visas under § 306 of EBSVERA. Plaintiffs challenge only Defendants' denials of visa pursuant to 8 U.S.C. § 1182(a)(3)(B).

Thus, Defendants argue that these three Plaintiffs' injuries would not be redressable should even if the Court were to grant the § 1182(a)(3)(B)-specific relief that Plaintiffs demand. *See Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1013 (9th Cir. 2018) ("a claim still lacks redressability if the plaintiff will nonetheless suffer the claimed injury if a court rules in its favor"); *Texas v. E.P.A.*, 726 F.3d 180, 198 (D.C. Cir. 2013) (no standing because vacating rules would not redress injury separately caused by a statute); *Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1277 (D.C. Cir. 2007) (no redressability where "the undoing of the [challenged] governmental action will not undo the harm" caused by separate government action). Accordingly, Defendants argue that these three Plaintiffs' claims regarding

---

[1] Plaintiffs' FAC states only that Mr. Khadempar's application was denied under § 1182(a)(3)(B), *see* FAC ¶ 24, however they do not dispute Defendants' statement in the McNeil Declaration that the application was *also* denied under Section 306 of EBSVERA, *cf.* Docket No. 33 ("Opposition") at 3 (conceding that "Defendants have identified three plaintiffs whose visa applications were denied for an IRGC TRIG finding plus another ground for denial."). Since there is no dispute between the parties as to the grounds under which Mr. Khadempar's visa was denied, the Court accepts the statement in the Defendants' declaration for the purpose of assessing standing.

10

their visa denials should be dismissed for lack of standing, because in light of the enduring validity of the denial of Plaintiffs' visas under § 306 of EBSVERA, none of these three Plaintiffs' harms are "likely to be redressed by a favorable judicial decision" in this case. *Spokeo II*, 136 S. Ct. at 1547.

Plaintiffs seem to concede Defendants' argument. Rather than showing that these Plaintiffs have satisfied their burden at the pleading stage to allege facts that demonstrate redressability for the purposes of the Court's standing analysis, *id.*, Plaintiffs contend only that it "would be inefficient to dismiss these three individuals" because they "may gain some legal protection if they are included in a class action after class certification." Opposition at 3. The Court's Article III standing analysis, however, does not turn on whether keeping a certain Plaintiff in a case is "efficient."

Absent any argument or facts alleged in the complaint demonstrating that these three Plaintiffs can satisfy the redressability prong of standing in light of the denials of their visas under EBSVERA, the Court **DISMISSES** the visa-denial claims of Plaintiffs Ahvan Ghaderi, Mehrdad Mohtadi and Ali Khadempar pursuant to Rule 12(b)(1).

2. <u>Ripeness</u>

Defendants argue that the Court should dismiss those Plaintiffs whose claims are not ripe and point to six Plaintiffs who "state that their various applications are *pending* and that they *expect* to be denied at some point based on their IRGC service." Motion to Dismiss at 12 (citing FAC ¶¶ 6 (Ali Rashidi Alavijeh, expects his application for immigrant visa to be denied under § 1182(a)(3)(B) after being previously denied on the same ground), 11 (Babak Parhoudeh expects his application for immigrant visa to denied under § 1182(a)(3)(B) due to his involuntary service with the IRGC), 19 (Mehrdad Mohtadi, same), 10 (Arash Mikaeli, expects his naturalization application to be denied due to his service with the IRGC), 32 (Roozbeh Lari, same), 33 (Seyed Ebrahim Kassaian, same). Defendants argue that the claims of these Plaintiffs "rest[] upon contingent future events that may not occur" and are, therefore, not ripe for judicial review. *Texas*, 523 U.S. at 300.

Plaintiffs respond that because "Defendants admit that once the IRGC was designated as a

1  Tier I terrorist organization, that there is no waiver or exemption available to those who have
2  served in the organization" and thus "the issue of ripeness is not dispositive because Defendants
3  cannot claim that these plaintiffs will see their applications approved." Opposition at 3-4.
4  Plaintiffs seem to be articulating a theory that it is *inevitable* that these six Plaintiffs will be denied
5  benefits, and thus it is not necessary to delay to wait for their claims to become formally ripe.
6  Such a theory is consistent with and supported by Ninth Circuit precedent for the three individuals
7  whose applications for *immigrant visas* are currently pending (Alavijeh, Parhoudeh and Mohtadi).
8  However, there is insufficient basis to conclude the same for the three individuals whose
9  applications for *naturalization* are pending (Mikaeli, Lari, and Kassaian).

10  The constitutional inquiry of ripeness is distinct from the standing analysis in that it "is
11  peculiarly a question of timing," *Thomas v. Anchorage Civil Rights Comm'n*, 220 F.3d. 1134, 1138
12  (9th Cir. 2002), and asks whether the "impact of the regulations upon [a plaintiff] is sufficiently
13  direct and immediate as to render the issue appropriate for judicial review *at this stage*." *Abbott*
14  *Laboratories v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v.*
15  *Sanders*, 430 U.S. 99, 97 (1977) (emphasis added). A challenge to a regulation will be deemed
16  ripe "where a regulation requires an immediate and significant change in the plaintiff's conduct of
17  their affairs with serious penalties attached to noncompliance." *Id.* at 153.

18  In the Ninth Circuit, ripeness is also analyzed through application of the so-called "firm
19  prediction rule" in cases where parties challenge the legality of particular "benefit-conferring
20  rule[s]" and do so before the parties actually apply for those benefits or before an agency renders a
21  final decision on an application for such benefits. *See Montana Environmental Information*
22  *Center v. Stone-Manning*, 766 F.3d 1184, 1190 (9th Cir. 2014) (explaining the "firm prediction"
23  rule's origins in *Reno v. Catholic Social Services*, 509 U.S. 43, 69 (1993) (O'Connor, J.,
24  concurring) and citing the Ninth Circuit's decision to adopt and apply the rule in *Freedom to*
25  *Travel Campaign v. Newcomb*, 82 F.3d 1431, 1436 (9th Cir. 1996)).

26  In *Catholic Social Services*, a group of noncitizens brought a pre-application challenge
27  against Immigration and Naturalization Service ("INS") regulations that established criteria for
28  lawful permanent residence. *See* 509 U.S. at 45. The Supreme Court found that a class member's

United States District Court
Northern District of California

12

claim "would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him," which could involve the INS either denying applications based on the contested criteria or "front-desking" applications, *i.e.*, refusing to accept applications for processing based on the contested criteria. *Id.* at 59, 61-62. In either situation, plaintiffs would be impacted by the regulations at issue in a "particularly concrete manner" that would render their claims ripe. *Id.* at 60-63.

The Court then found it could "firmly predict that [plaintiff's] application would be denied" based on plaintiffs' failure to meet the stated criteria, and held, in turn, that their claims were ripe. *Id.* The Ninth Circuit reached a similar conclusion in another pre-application case, *Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor (AFL-CIO) v. INS*, finding the claims of particular plaintiffs ripe based on the court's ability to "firmly predict that the INS will eventually deny these applications.'" 306 F.3d 842, 863 (9th Cir. 2002)

Here, the three Plaintiffs whose applications for *immigrant visas* satisfy the standard for ripeness because the Court can "firmly predict" that their visas will be denied. Since the government's April 2019 designation of the IRGC as a Tier I organization, there is no indication that any visa applicant who served in the IRGC at any point in the past has been granted an immigrant visa. Indeed, the State Department's current policy is that exemptions are not available for immigrant visa applicants who served mandatory military service in the IRGC. *See* U.S. Virtual Embassy Iran, "FAQs for Iranian Applicants," available at https://ir.usembassy.gov/visas/faqs/. These three Plaintiffs (Alavijeh, Parhoudeh and Mohtadi) previously served in the IRGC and have applied for immigrant visas. Thus the Court can "firmly predict" that these three Plaintiffs' immigrant visas will be denied.

By contrast, there is no indication that it is inevitable that the three Plaintiffs whose claims for *naturalization* are currently pending (Mikaeli, Lari, and Kassaian) will have their applications denied. Plaintiffs plead no facts nor do they point to law that suggest that the designation of the IRGC as a Tier I organization means that their applications for naturalization will necessarily be denied particularly where their service was compelled prior to the Tier I designation. Plaintiffs do not point to any other similar examples, nor identify statutory provisions that would lead the Court

to infer that their applications for *naturalization* will be denied due to the 2019 designation of IRGC as a Tier I organization. *Cf.* FAC ¶ 63 (Plaintiffs allege that as part of the naturalization process, applicants are asked if they offered any material support to terrorists, but Plaintiffs do not indicate that a finding of inadmissibility under § 1182(a)(3)(B) bars an application for naturalization from being approved). S*ee also* USCIS Policy Manual Ch. 2, Lawful Permanent Resident Admission for Naturalization § D(2) ("Inadmissible at Time of Admission or Adjustment . . . In general, a naturalization applicant who, before obtaining LPR status, committed an act that would have rendered him or her inadmissible under one or more of the terrorism-related inadmissibility grounds (TRIG) *at the time of adjustment or admission as an LPR* [which, in the case of the individual plaintiffs herein, could have been before the IRCG was designated as a Tier I organization], may not be considered lawfully admitted for permanent residence") (emphasis added). Thus, the Court cannot "firmly predict" that these Plaintiffs' applications for naturalization will be denied. *AFL-CIO*, 306 F.3d at 863. The claims of Plaintiffs Mikaeli, Lari and Kassaian "rest[] upon contingent future events that may not occur" and are, therefore, not ripe for judicial review. *Texas*, 523 U.S. at 300.

Thus, the Court **GRANTS** Defendants' motion to dismiss the claims of Plaintiffs Arash Mikaeli, Roozbeh Lari and Seyed Ebrahim Kassaian as unripe under Rule 12(b)(1). The Court **DENIES** the motion as to the claims of Plaintiffs Ali Rashidi Alavijeh, Babk Parhoudeh, and Mehrdad Mohtadi.[2]

B.   Failure to State a Claim

Plaintiffs allege two claims in the FAC: that by failing to create an individualized waiver process for TRIG inadmissibility for Plaintiffs who involuntary served in the IRGC, Defendants violated (1) violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(C), and (2) violated Plaintiffs' right to due process under the Fifth Amendment. *See* FAC ¶¶ 77-91 (APA

---

[2] As explained above, Plaintiff Mohtadi's challenge to the *past* denial of his *F-1 non-immigrant visa* is not redressable because it was denied on an independent statutory ground, so his claim as to the F-1 non-immigrant visa is dismissed because the Court lacks subject matter jurisdiction. The Court, however, concludes that it does have subject matter jurisdiction over Mohtadi's challenge to the *pending* adjudication of his application for *immigrant visa*.

14

claims)³, 92-102 (due process claim).

Defendants respond that Plaintiffs fail to state claims on either ground. First, Defendants contend that Plaintiffs' APA claims are precluded from judicial review under the doctrine of consular nonreviewability and because the authority to grant group or situational exemptions from TRIG is committed to the "sole unreviewable discretion" of the Secretaries of State and Department of Homeland Security under 8 U.S.C. § 1182(d)(3)(B)(i). *See Kleindienst v. Mandel*, 408 U.S. 753, 759 (1972) (consular nonreviewability); *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984) (no judicial review under statutes that preclude review). Second, Defendants argue that, pursuant the holdings of binding authority, Plaintiffs lack constitutionally-protected interests that can serve as the basis for their constitutional claims. *See Khachatryan v. Blinken*, 4 F.4th 841, 849-50 (9th Cir. 2021).

Plaintiffs fail to meaningfully oppose *any* of Defendants' arguments. Plaintiffs filed an opposition brief that amounts to three-and-half pages of text and lacks citation to any legal authority in support of the claims they assert in the FAC or in opposition to Defendants' arguments. The *only* argument that Plaintiffs make in response to Defendants is that the doctrine of consular nonreviewability "only covers decisions made by Consular officers, not the *failure to make a decision* in an application." Docket No. 33 ("Opp.") at 4. However, Defendants cite no legal authority in support of this conclusory position, do not engage Defendants' briefing, nor do they distinguish their allegations here from Defendants' citations to law that purport to preclude judicial review on Plaintiffs' APA claims. Furthermore, Plaintiffs' briefing does not *mention*, let alone defend, their constitutional claims. At the hearing, Plaintiffs' counsel raised, for the first time, an argument that the government's actions regarding Plaintiffs' visa applications were made in bad faith in violation of Plaintiffs' constitutional rights and which provides an exception to the doctrine of consular nonreviewability. But this allegation was never pled in the FAC, nor do Plaintiffs make *any reference* at all to their constitutional arguments in their Opposition brief.

Accordingly, given Plaintiffs' failure to develop any arguments grounded in any legal

---

³ Although Plaintiffs separate their APA claims into two separate counts, both proceed under § 706(2)(c) of the APA and allege the same statutory and regulatory violations.

authority in response to Defendants' 12(b)(6) motion, the Court finds that Plaintiffs have waived and abandoned all arguments in opposition to the government's motion. *See Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned"); *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("[Plaintiff's] challenge to the constitutionality of § 314 of the Federal Aviation Act is waived due to his failure to present a specific, cogent argument for our consideration."). Because Plaintiffs have waived and abandoned all responses to Defendants' 12(b)(6) motion, the Court grants Defendants' motion to dismiss all of Plaintiffs' claims.

Furthermore, the Court dismisses the complaint with prejudice. It does so without addressing the merits of, *e.g.*, the contours of consular nonreviewability and its application here. In light of Plaintiffs' failure to meaningfully defend their claims, the Court concludes it would be futile to allow Plaintiffs to amend their complaint. *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000).

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Docket No. 29. The Court **DISMISSES** the claims of Plaintiffs Ahvan Ghaderi, Mehrdad Mohtadi and Ali Khadempar, Arash Mikaeli, Roozbeh Lari and Seyed Ebrahim Kassaian for lack of subject matter jurisdiction under Rule 12(b)(1). The Court **DISMISSES** all other claims for Plaintiffs' failure to state a clam under Rule 12(b)(6).

This order disposes of Docket No. 29. The Clerk is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

Dated: November 3, 2021

_____
EDWARD M. CHEN
United States District Judge